[File No. 7308]

GLADYS ELLISON, Appellant, v. THILO O. ELLISON, Respondent.

(54 NW2d 656)

Opinion filed August 25, 1952

*Ella Van Berkom,* for appellant.

*McGee & McGee,* for respondent.

Per Curiam. The instant appeal is from the judgment awarding a divorce to the defendant. The case is in this court for trial de novo on demand of the plaintiff.

The action was originally brought in July 1949, for a decree of separation, for maintenance and support, and for the custody of the children of the marriage. See Chapter 14-06 NDRC 1943. The defendant answered denying the allegations of fact on which the plaintiff predicated her prayer for relief and by cross

complaint prayed for a divorce on the grounds of extreme cruelty and desertion. Chapter 14-05 NDRC 1943. Thereafter, in May 1950, the plaintiff amended her complaint praying therein for an absolute divorce, alimony and support money, and the custody of the children, alleging as grounds therefor cruelty on the part of the defendant.

The case came on for trial. Due to the patience and forbearance of the trial court, more than a week was consumed by the trial. The transcript of the testimony consists of 1308 pages and there are a great number of exhibits. The trial court found for the defendant and ordered judgment for a divorce on the grounds of cruelty and desertion; whereupon the plaintiff perfected the instant appeal.

It is unnecessary to state more than a brief summary of the evidence. The parties were married in June 1938. The plaintiff was then 28 years of age; the defendant 33. They had no property other than their few personal belongings, and their cash capital was $25.00, contributed by the plaintiff. Two children were born of this marriage—one a son, now 13 years old, and the other a daughter, now 8. They moved about considerably during the first years of the marriage but finally settled in Minneapolis, where they lived for some time. Thereafter, through their joint efforts they accumulated some property. In 1946 they moved to Garrison, North Dakota, where they established a tourist court. They lived there until April 1948, building and operating the court. The defendant did a large part of the work in its construction. The plaintiff looked after and managed its operation. It was a reasonably successful financial enterprise. Plaintiff, however, was not wholly satisfied there; so, largely at the plaintiff's insistence, the defendant consenting, the parties removed to Minneapolis and advertised the court for sale. No sale, however, was made. In Minneapolis they purchased a rooming house, a building then considerably in disrepair. Both labored at putting it in usable condition. The plaintiff and the children remained in Minneapolis, occupying an apartment in this building. The defendant returned to Garrison to complete some of the cabins on the court there, then in the process of construction, and to assist in the operation of

the court. For some time he frequently returned to Minneapolis where he and the plaintiff lived as man and wife. He left his clothing there and had his tools—he was somewhat of a carpenter and mechanic—in the basement. But it was deemed necessary for him to spend the greater part of his time at Garrison. During the first part of 1948 when he was at Garrison, he wrote affectionate letters to the plaintiff and the children. As time went on, however, his interest and ardor diminished and in December 1948 he paid his last visit to the family in Minneapolis and for the last time he and the plaintiff lived together as man and wife. Thereafter he made no visits to the family. But in March 1949 he went down to make out a joint income tax return with the plaintiff. Their place of residence was stated therein as North Dakota. In June 1949 the plaintiff, dissatisfied with his failure and refusal to return, consulted a lawyer, and defendant, at her request, came to Minneapolis where both parties conferred with this lawyer, but arrived at no conclusion as to what should be done. Defendant then, without notice to the plaintiff, took the children and returned with them to Garrison. Shortly thereafter plaintiff went to Garrison and, denied admission to the living quarters in the court, forcibly entered the same, and in a few days brought the action for a separation.

The trial was concluded on August 4, 1950, and apparently before the testimony was transcribed, the court on February 8, 1951, made and signed his findings of fact and conclusions of law and order judgment for the defendant; awarded him a divorce on the grounds of cruelty and desertion; awarded the rooming house to the plaintiff and the tourist court to the defendant; and gave the custody of the son of the marriage to the plaintiff and the daughter to the defendant. He found the value of the rooming house to be $12,500.00, subject to a mortgage, and the tourist court to be of the value of $13,125.00, subject to three mortgages and delinquent taxes. Judgment was entered accordingly.

The case being here for trial de novo, it must be tried anew in this court on the record as made in the trial court. The findings of the trial court, however, while not conclusive on this court, are entitled to appreciable consideration and weight. See Belt v. Belt, 75 ND 723, 32 NW2d 674, and cases cited therein.

Viewing the record in the light of the rule stated above, this court is of the opinion that the finding of the trial court of cruelty on the part of the plaintiff is warranted by the record and therefore the judgment of divorce on that ground is affirmed. However, in many other respects the findings of the trial court, including that of desertion on the part of the plaintiff, are not sustainable on the record. Both parties were at fault and the record is such that had the court found for the plaintiff this court would have had no hesitancy in affirming a judgment in plaintiff's favor.

The record warrants the finding as to the value of the rooming house and of the tourist court, but there is no finding as to the value of their furnishings and equipment, nor of the other personal property, if any, of the parties. In any event, such property as they have, both real and personal, was acquired and accumulated subsequent to their marriage and through their joint efforts.

"When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, . . . ." Section 14–0524 NDRC 1943.

See also in this connection Ruff v. Ruff, 78 ND 775, 52 NW 2d 107. Considering all the facts and circumstances disclosed by the record, we are agreed that the judgment as to the division of the real property should be affirmed and the furnishings and equipment of the rooming house awarded to the plaintiff and those of the tourist court to the defendant. Such other personal property as the respective parties now have in their possession is awarded to the present possessors thereof.

This court is of the opinion that the trial court erred with respect to the custody of the children. The defendant, who was awarded the custody of his daughter, has no place of abode other than the tourist court. His health is not good; his habits are not exemplary. Other than the trial court's finding that the plaintiff sometimes exhibited a somewhat ungovernable temper, there is nothing to indicate that she is not a fit and proper person to have the custody of the children. The chil-

dren, both of whom testified, refused to state any preference as to whether their custody should be given to the plaintiff or the defendant. The little girl testified that she liked both of them. The plaintiff now has the custody of both. We are of the opinion that they should remain in her custody unless and until otherwise ordered, subject to the right of reasonable visitation by the defendant. The cost of the transcript is $817.50. Both sides were at fault in creating a record of such magnitude. Accordingly, the cost of procuring the transcript should be borne equally by the parties, and the plaintiff, having procured it, shall have judgment against the defendant for $408.75.

The plaintiff, being awarded the custody of the children, is entitled to at least a part of the expense necessarily to be entailed in their care, maintenance, and upbringing. Therefore, the defendant will pay for their support and maintenance the sum of $50.00 per month until the further order of the court.

The division of their property having been ordered as above stated, each of the parties is directed to execute such conveyances to the other as may be necessary to effectuate the division. In case such parties, or either of them, fail or refuse to comply with this direction, the judgment entered shall stand as for and in lieu of such conveyances. The real property awarded to the defendant will be charged with a lien to insure the payment of defendant's portion of the cost of the transcript.

The case is remanded to the trial court for disposition consistent with the foregoing opinion, and the judgment as thus modified is affirmed.

MORRIS, C. J., and BURKE, SATHRE, CHRISTIANSON and GRIMSON, JJ., concur.